# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

|  |  |
|---|---|
| GARY MILLER,<br><br>          Plaintiff,<br><br>v.<br><br>ALLIED PILOTS ASSOCIATION,<br><br>          Defendant. | Civil Action No. 4:26-cv-0302-O |

## DEFENDANT ALLIED PILOTS ASSOCIATION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Dated: June 23, 2026

Respectfully submitted,

RYAN E. GRIFFIN*
D.C. Bar No. 1007078
DANIEL M. ROSENTHAL*
D.C. Bar No. 1010473
James & Hoffman, P.C.
1629 K Street NW, Suite 1050
Washington, DC 20006
Tel: 202-496-0500
Email: regriffin@jamhoff.com
Email: dmrosenthal@jamhoff.com

SANFORD R. DENISON
Tex. Bar No. 05655560
Baab & Denison, LLP
6301 Gaston Ave., Suite 1320
Dallas, TX 75214
Tel.: (214) 637-0750
Fax.: (214) 637-0730
Email: denison@baabdenison.com

*Counsel for Defendant Allied Pilots Association ("APA")*

\* Admitted *Pro Hac Vice*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I.      Count I fails to state a plausible claim for relief under 29 U.S.C. § 411(a)(2).....................1

    A.  Plaintiff fails to plausibly allege infringement of LMRDA free speech interests ...............1

    B.  Plaintiff fails to plausibly allege APA misapplied its rule against off-topic posting...........3

    C.  Plaintiff fails to plausibly allege that the off-topic posting rule is unreasonable................6

II.     Count II should be dismissed for lack of jurisdiction and for failure to state a claim ..........7

    A.  Plaintiff fails to establish jurisdiction over his disciplinary due process claim...................7

    B.  Plaintiff fails to plausibly allege discipline within the meaning of the LMRDA ................9

CONCLUSION..............................................................................................................10

CERTIFICATE OF SERVICE .........................................................................................12

## TABLE OF AUTHORITIES

**Cases**

*Fulton Lodge No. 2 of Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Nix*, 415 F.2d 212 (5th Cir. 1969) ................................................................................................... 1, 2

*Guidry v. Int'l Union of Operating Eng'rs, Loc. 406*, 882 F.2d 929 (5th Cir. 1989) ................ 1, 2

*Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672 (1992) ........................................ 5

*Miller v. Holden*, 535 F.2d 912 (5th Cir. 1976) ........................................................................ 9, 10

*Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37 (1983) ........................................ 5

*Saltzhandler v. Caputo*, 316 F.2d 445 (2d Cir. 1963) .................................................................... 2

*Smit v. SXSW Holdings, Inc.*, 903 F.3d 522 (5th Cir. 2018) ........................................................... 3

*U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370 (5th Cir. 2004) ........................... 3

*United Steelworkers of Am., AFL-CIO-CLC v. Sadlowski*, 457 U.S. 102 (1982) ........................... 3

**Statutes**

29 U.S.C. § 411(a)(2) ................................................................................................................... 1, 2

29 U.S.C. § 411(a)(5) ................................................................................................................. 9, 10

Plaintiff (Miller), asks this Court to serve as super-administrator of the online forum run by Defendant (APA) by declaring it illegal under the LMRDA for APA to maintain a rule against off-topic posting; illegal to deem Miller's "travel-related" post (his own words) off-topic on the "777 Systems and Training" subforum; and illegal to temporarily restrict Miller's access to the forum as a result. The Court should decline this invitation. Miller's travel-related post is not the kind of speech the LMRDA protects. Even if it were, such speech is subject to reasonable restrictions, which the off-topic rule is. And Miller was not disciplined within the meaning of the LMRDA because his status as a member of APA was never affected by his temporary loss of access to the forum. His Complaint (FAC) (Doc. 19) should thus be dismissed.

## I.  Count I fails to state a plausible claim for relief under 29 U.S.C. § 411(a)(2).

### A.  Plaintiff fails to plausibly allege infringement of LMRDA free speech interests.

APA showed that Miller failed to allege he engaged in any speech protected by the LMRDA. APA Br. (Doc. 22) at 9–10. The LMRDA was enacted for the purpose of "promot[ing] union democracy"; its free speech provisions thus serve to ensure that "union members are free to discuss union policies and criticize the leadership without fear of reprisal"; and Miller's post implicated none of these interests because it was unconnected to any union-related matters. *Id.*

Miller concedes this is a threshold issue. Pl. Opp. (Doc. 25) at 7 (a court must first consider whether the rule interferes with a protected interest). He then opposes APA's showing on two grounds, one legal and one factual. But he is wrong as to both the law and the facts.

First, Miller argues that the LMRDA protects any and all member-to-member speech, regardless of subject matter. Pl. Opp. at 4 (citing *Guidry v. Int'l Union of Operating Eng'rs, Loc. 406*, 882 F.2d 929, 936 (5th Cir. 1989), and *Fulton Lodge No. 2 of Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Nix*, 415 F.2d 212, 218 (5th Cir. 1969)). But both cases Miller cites support APA's position that his post is unprotected.

1

Starting with *Guidry*, the speech at issue was indisputably union-related because it pertained to the plaintiff's "opposition to the Union leadership," including reporting alleged corruption to the FBI, filing internal charges against a union official, "openly complain[ing]" about "the Union leadership's operation of the hiring hall." *Guidry*, 882 F.2d at 935–36. The issue was whether such speech was protected only when it occurred in the context of a union election. *Id.* at 936 (defendants assume "that in order to assert a violation of section 101(a)(2) of the LMRDA, a plaintiff must show that he or she spoke out in opposition to Union leadership in the context of an election"). The court said no, ruling that Section 411(a)(2) "does not limit such expression to one occurring *in the context of a union election*." *Id.* (emphasis added, and noting: "The defendants do not cite, nor have we found, any cases that limit the free speech rights protected by the LMRDA[] . . . to speech relating directly to an election within the union.").

Turning to *Nix*, the speech at issue was likewise indisputably union-related because the case involved the plaintiff's expulsion from membership "solely for the effect of the remarks upon [an elected union leader's] personal character and union reputation . . . ." *Nix*, 415 F.2d at 217. Again, the issue was whether the particular context in which the speech occurred—in this case, the plaintiff's attempt to organize a staff union, as opposed to participating in the internal processes of the union for which he worked (but was also a member)—rendered it unprotected. *Id.* And again, the court said no, reasoning:

> The LMRDA . . . protect[s] the rights of union members to discuss freely and criticize the management of their unions and the conduct of their officers. The legislative history . . . evidence[s] the intention of Congress to prevent union officials from using their disciplinary powers to silence criticism and punish those who dare to question and complain.

*Id.* at 218 (quoting *Saltzhandler v. Caputo*, 316 F.2d 445, 448–49 (2d Cir. 1963)).

In short, both *Guidry* and *Nix* correctly recognize that Section 411(a)(2) is not a

generalized free speech rule akin to the First Amendment, but rather a carefully targeted rule meant to ensure union members can discuss internal union matters without reprisal. APA Br. at 7–8. And indeed, Miller eventually concedes that the "core" of the LMRDA's speech protections is the congressional belief that "democracy would be assured only if union members are free to discuss union policies and criticize the leadership without fear of reprisal." Pl. Opp. at 7 (quoting *United Steelworkers of Am., AFL-CIO-CLC v. Sadlowski*, 457 U.S. 102, 112 (1982)).

Second, Miller argues that even if LMRDA free speech protections are limited to union-related speech, his post qualifies because he alleges his post was "directly relevant to APA members' shared employment as 777 captains." Pl. Opp. at 5. According to Miller, this presents "a paradigmatic fact question" as to whether his post is union-related. *Id.* He argues the court must "accept [his] pleaded characterization" at the pleading stage and defer any consideration of "[w]hether the post is 'really' about a vacation or about professional study . . . ." *Id.*

Not so. As the Fifth Circuit has repeatedly explained, "when an 'allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls.'" *Smit v. SXSW Holdings, Inc.*, 903 F.3d 522, 528 (5th Cir. 2018) (quoting *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004)).

Simply put, Miller cannot manufacture a factual dispute through "pleaded characterization[s]" of a document incorporated into the pleadings. APA Br. at 6 (explaining why his post is part of the pleadings—a point he does not dispute). Instead, the Court should read the post for itself and conclude that it is not even 777-related, much less related to APA's policies or its leadership, and thus does not implicate LMRDA-protected free speech interests.

**B. Plaintiff fails to plausibly allege APA misapplied its rule against off-topic posting.**

Even if Miller's post implicated LMRDA-protected speech, he failed to plausibly allege

3

that APA misapplied the rule against off-topic posting. APA Br. at 10–13. Specifically, the post fails to address any of the topics that Miller identifies as the topics of the subforum to which he posted; Miller conceded the off-topic nature of his post in both the post itself and in his Complaint, where he described it as belonging in "a travel-related forum"; and any allegations to the contrary lack plausibility because they are contradicted by the plain text of the post. *Id.*

Miller does not seriously contend that his post was germane to the "777 Systems and Training" subforum. *See* Pl. Opp. at 5 ("setting aside" the question of "whether the post was 'germane'"). Instead, his "as-applied" argument is essentially that even though his post was off-topic, APA's alleged failure to consistently remove all other off-topic posting renders the removal of his off-topic post "viewpoint- and speaker-based discrimination." *Id.* at 5–6.

To succeed on this argument, it is not enough for Miller to show that APA acted arbitrarily. Rather, he must show that APA's motivation was "disagreement with the speaker's view." Pl. Opp. at 6 (quotation and citation omitted). Yet, his allegations do not support a plausible conclusion that he was targeted in that manner.

First, the only "views" Miller expressed in his post were that he found studying at the abandoned Grand Canyon airport "relaxing and effective" and "highly recommend[ed]" it. APA Br. at 5. He makes no allegation that APA disagreed with either opinion or removed his post because of them. To the contrary, he specifically alleges that "APA did not accuse Captain Miller's post of violating any AUP category other than 'off-topic.'" FAC ¶ 31. Nor does Miller allege that he expressed other views, outside the post in question, distasteful to APA leadership.

Miller also suggests that it is sufficient for him to show discrimination based on "the speaker's identity," although the cases cited deal with viewpoint discrimination, not "identity" discrimination. Pl. Opp. at 6. In any event, the only "identity" that Captain Miller asserts is that

4

he is a "rank-and-file member" of APA. *Id.* Setting aside the general implausibility of a union discriminating against union members, Miller alleges that APA has allowed "numerous" off-topic posts to remain on The Line, yet he does not allege that the authors of these posts were anyone other than rank-and-file members. FAC ¶ 32; *see also id.* Ex. 1 (confirming that The Line is a members-only forum). In other words, accepting Miller's allegations as true, APA regularly allows rank-and-file members to make off-topic posts. These allegations rebut his suggestion that APA discriminated against him *because of his rank-and-file status*.

Accordingly, Miller fails to plausibly allege any viewpoint or identity discrimination. And the cases cited in his brief reaffirm the permissibility of subject-matter restrictions like APA's off-topic rule in the absence of such discrimination. Per *Perry*: "Implicit in the concept of the nonpublic forum is the right to make distinctions in access on the basis of subject matter and speaker identity." *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 49 (1983). Turning to *Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672 (1992), the facts are particularly on-point. The restriction at issue was a ban on solicitation in the terminals of the major New York airports. *Id.* at 685. The restriction did not target the plaintiff specifically, either for its identity or its beliefs; rather, it was directed at the nature or subject matter of the speech— *i.e.*, solicitation—and the Court found it to be "reasonable" in light of the airport authority's legitimate interest in efficiently moving passengers through a crowded space and the potential disruptions to the normal flow of foot traffic that solicitation could cause. *See id.* at 683–85.

Here, APA has acted similarly: it has aimed to avoid undue interference from off-topic posts, based on restrictions on the content of the posts, not the speaker's viewpoint or identity. For these reasons, the Court should conclude that even if Miller's speech was somehow protected by the LMRDA, APA reasonably applied its off-topic rule to his "travel-related" post.

5

**C. Plaintiff fails to plausibly allege that the off-topic posting rule is unreasonable.**

Because APA fairly applied the off-topic rule to Miller, his free speech claim can survive only if the rule itself is invalid (and only if Miller engaged in LMRDA-protected speech, which he did not). But merely maintaining a rule against off-topic posting is not illegal. APA Br. at 13–18. The off-topic rule is reasonable because, as noted above, it advances APA's interest in facilitating discussion among members on topics relevant to their employment. *Id.* at 14–16. And to the extent Miller has any LMRDA speech interests here, any infringement is minimal because he remains free to discuss "travel-related" matters anywhere other than APA-run forums dedicated to other topics. *Id.* at 16–18.

Miller opposes this conclusion on four grounds. First, he argues the off-topic rule is unreasonable because posts are reviewed by an APA officer or designee, with "no objective criteria, no notice, no opportunity to respond, no hearing, and no appeal." Pl. Opp. at 7. But this argument conflates two distinct legal issues—whether the off-topic rule is a reasonable restriction on speech, and whether it is enforced in a manner consistent with the LMRDA. APA acknowledges that, if suspension from The Line constitutes discipline under the LMRDA (which it does not, as discussed below), then certain process is required under the statute. But this has no bearing on whether it is reasonable for APA to prohibit off-topic posts in the first place.

Second, Miller argues that the off-topic rule is unreasonable because it "is enforced selectively against rank-and-file members." *Id.* at 7–8. But "selective enforcement" is an as-applied problem, not a problem with the reasonableness of the off-topic rule itself. And Miller fails to plausibly allege an as-applied violation, as explained above.

Third, Miller argues that the off-topic rule is unreasonable in light of APA's earlier elimination of the travel and general-discussion subforums, "so members had nowhere else on

6

The Line to raise the same subjects." Pl. Opp. at 8. But APA has no legal obligation to maintain these other forums, nor does Miller make any allegation or cite any authority to the contrary.

Finally, Miller argues that his claim of facial invalidity is inherently immune from a motion to dismiss because APA bears the burden of proving reasonableness and must make an evidentiary showing to carry this burden. *Id.* at 8–9. But this confuses burden of proof with sufficiency of pleadings. Even assuming *arguendo* that APA would bear the burden of proving reasonableness at trial (which APA does not concede), this would not relieve Miller of alleging facts that, if true, would be sufficient for the Court to draw a reasonable inference that the off-topic rule was unreasonable. And that is what Miller fails to do.

## II.   Count II should be dismissed for lack of jurisdiction and for failure to state a claim.
### A.   Plaintiff fails to establish jurisdiction over his disciplinary due process claim.

The Court lacks jurisdiction over Miller's due process claim as it relates to his temporary suspension from The Line for 14 days in March 2025 due to mootness, lack of a concrete injury, and/or lack of redressability. APA Br. at 20–21. Specifically, any 'loss of access' injury was fully remedied when Miller's access was restored; any 'lost opportunity to participate' is purely abstract rather than concrete because Miller does not allege missing out on any particular discussion or communication while suspended; and even if he had alleged a specific lost opportunity, the exclusively injunctive relief he seeks would not redress such an injury. *Id.*

The Court likewise lacks jurisdiction over Miller's due process claim as it relates to his post-suspension status on ripeness grounds. *Id.* at 22–23. Specifically, because Miller currently enjoys full access to The Line, the only continuing "injury" he is able to allege concerns the future action he speculates APA may take if he makes another off-topic post or otherwise violates the terms of use governing access to The Line at that time. *Id.*

As to the suspension itself, Miller effectively concedes mootness by acknowledging the

suspension has "lapsed," but argues that his claim falls within the "capable-of-repetition" exception to mootness. Pl. Opp. at 10. According to Miller, this exception applies because "[a] fourteen-day suspension is, by its nature, far too short to litigate to judgment before it expires; and the Complaint alleges a reasonable expectation of recurrence . . . ." *Id.* at 11.

But this is not what the Complaint says. In fact, Miller alleges precisely the opposite—that there is *no* possibility that another temporary suspension will occur. Specifically, Miller alleges that "any later alleged non-compliance following the initial suspension would subject him to *immediate permanent suspension* from The Line." FAC ¶ 51 (emphasis added); *see also id.* ¶ 54 (same). In other words, taking Miller's allegations as true, there is *no* chance of another temporary suspension that would be too brief to review, and any future permanent removal from The Line would be fully reviewable if any when it occurs.

As to Miller's post-suspension status, he argues that his injury is ripe because he is subject to permanent suspension from The Line "for any future infraction" of its terms of use and thus "presently[] subject to a harsher enforcement regime than comparable members," which "chills his exercise of protected rights." Pl. Opp. at 10–11.

Again, however, this is the opposite of what Miller actually alleges. What he says is that "[u]se of The Line requires each member, upon each log-in, to accept the terms of the AUP [Acceptable Use Policy] . . . ." FAC ¶ 14. Thus, the "enforcement regime" he complains of is the same one that applies to all APA members, nor does he allege that any other "comparable" member—*i.e.*, one with a prior infraction—is being treated differently. In essence, Miller's complaint is that of a batter deep in the pitch count complaining of being at greater risk of striking out than a batter who just stepped to the plate.  But this is not differential treatment—it is simply the application of the same rules to everyone.

In sum, Miller may someday have a justiciable claim *if* he makes another post which violates the AUP, and *if* he is permanently removed from The Line as a result. For now, though, he has the same access to The Line as other members, subject to the same rules. *See* Pl. Opp. at 11. There is thus nothing for the Court to adjudicate at this time.

### B. Plaintiff fails to plausibly allege discipline within the meaning of the LMRDA.

Even if the Court had jurisdiction to review Miller's disciplinary claim at this time, he still fails to plausibly allege he was disciplined within the meaning of the LMRDA because neither his temporary suspension from The Line nor his post-suspension status affected his status *as a member in good standing of APA* (*e.g.*, to run for office, vote in elections, participate in meetings, etc.), nor did either of these actions meaningfully separate him from any other APA member in good standing since, in addition to maintaining full membership rights at all relevant times, he also retains full access to The Line. APA Br. at 24–25.

Miller opposes this conclusion on two grounds. First, he argues that his temporary suspension from The Line constituted discipline under Section 411(a)(5) because he was "separated" from comparable members in good standing, who retained access to the forum during his suspension. Pl. Opp. at 12–13 (citing *Miller v. Holden*, 535 F.2d 912 (5th Cir. 1976)).

But *Miller v. Holden* supports APA's position, not Miller's. In that case, the Fifth Circuit explained that "the general term 'discipline'" must be construed "to conform to the essential character of the specifically enumerated types of discipline" listed in Section 411(a)(5), namely "fine, expulsion, and suspension" from membership. *Miller*, 535 F.2d at 914–15. And it held that "the complaint obviously fails to state a claim under § 411(a)(5)" because "the parties agree that the plaintiff remained a member in good standing after" the actions he alleged constituted discipline under the LMRDA. *Id.* at 915 and n.8.

Likewise, here: Miller does not allege that he was fined, expelled, or suspended *from membership in APA*, either in connection with his temporary suspension *from The Line* or otherwise. He does not allege that his right to vote in union elections was ever affected, or that his right to run for union office was limited, or that his right to participate in union meetings was ever infringed. Nor does he allege that his status was ever anything other than a member in good standing—either before his temporary suspension from online forum, during it, or afterward. In short, Miller does not allege that he experienced any action comparable to "the essential character of the specifically enumerated types of discipline" listed in Section 411(a)(5). Thus, as in *Miller v. Holden*, he likewise fails to state a claim under Section 411(a)(5).

Miller's second argument is that he is still being disciplined within the meaning of Section 411(a)(5) because "[he] alone faces 'immediate permanent suspension' for any future infraction, while comparable members receive a graduated response." Pl. Opp. at 13.

But this is untrue because, as explained above, there is no differential treatment. Rather, any "comparable" member with one strike against them under the generally applicable terms of use is necessarily in the same boat as Miller with respect to "any future infractions" of the same generally applicable rules. And any members who receive "a graduated response"—*i.e.*, a temporary suspension for their first violation of the terms of use—would be receiving the same benefit of a second chance that Miller has already received. In short, Miller fails to allege that his current status (*i.e.*, full access to The Line) constitutes discipline under the LMRDA because he fails to allege that he is currently being treated any differently than any other APA member.

## CONCLUSION

For these reasons, the Complaint should be dismissed with prejudice in its entirety.

10

Dated: June 23, 2026                                 Respectfully submitted,

                                                     /s/ Ryan E. Griffin
                                                     RYAN E. GRIFFIN*
                                                     D.C. Bar No. 1007078
                                                     DANIEL M. ROSENTHAL*
                                                     D.C. Bar No. 1010473
                                                     James & Hoffman, P.C.
                                                     1629 K Street NW, Suite 1050
                                                     Washington, DC 20006
                                                     Tel: 202-496-0500
                                                     Email: regriffin@jamhoff.com
                                                     Email: dmrosenthal@jamhoff.com

                                                     SANFORD R. DENISON
                                                     Tex. Bar No. 05655560
                                                     Baab & Denison, LLP
                                                     6301 Gaston Ave., Suite 1320
                                                     Dallas, TX 75214
                                                     Tel.: (214) 637-0750
                                                     Fax.: (214) 637-0730
                                                     Email: denison@baabdenison.com

                                                     *Counsel for Defendant Allied Pilots
                                                     Association ("APA")*

* Admitted *Pro Hac Vice*

11

**CERTIFICATE OF SERVICE**

I certify that on this 23rd day of June 2026, a true and correct copy of the foregoing

document was served on counsel for all parties of record listed below by means permitted by

Rule 5(b)(2) of the Federal Rules of Civil Procedure.

James H. Creedon
Texas Bar No. 24092299
Charles A. Wallace
Texas Bar No. 24110501
5 Cowboys Way, Suite 300
Frisco, Texas 75034
Tel. 415.735.5933
jcreedon@scalefirm.com
cwallace@scalefirm.com

/s/ Ryan E. Griffin<br/>RYAN E. GRIFFIN